UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

VALLEY PETROLEUM, LLC,

Case No. 09-28869

Chapter 11

Debtor.

_____

VALLEY PETROLEUM, LLC,

Plaintiff,

v.                                                              Adversary No. 09-2328

GARROW OIL CORPORATION,

Defendant.

_____

AMENDED MEMORANDUM DECISION

_____

The chapter 11 debtor brought this adversary proceeding to avoid and recover a

preferential transfer made by the debtor to the defendant, Garrow Oil Corporation.  After Garrow

Oil answered the complaint and asserted affirmative defenses, a trial was held on June 14, 2010,

and the Court took the matter under advisement.  This is a core proceeding under 28 U.S.C. §

157(b)(2)(F), and the Court has jurisdiction under 28 U.S.C. § 1334.  This decision constitutes

the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  For the

reasons stated below, judgment will be granted in favor of the plaintiff.

BACKGROUND

The relevant facts are not in dispute.  The debtor, Valley Petroleum, LLC, operates two

gas station/convenience stores in the Appleton area and is owned and managed by its two

members, Steve and Suzanne Rosek.  One of the convenience stores had been purchased several

years ago from the defendant, Garrow Oil Corporation, the debtor's former wholesale gasoline, propane, and diesel fuel provider.  Under the parties' Associate Distributorship Agreement, payment for fuel was due via electronic fund transfer (EFT) from the debtor's bank account ten days after delivery.  A portion of the running balance was first collected through the debtor's assignment of Citgo and Wright Express credit card receivables to Garrow Oil.  The balance owed on a fuel shipment was then paid when Garrow requested an EFT from the debtor's bank account.

On or about June 4, 2009, Garrow was notified by its bank that the debtor's EFT draw in the amount of $46,545.49 for delivery of fuel on May 26, 2009, was dishonored by the debtor's bank.  The debtor then paid Garrow Oil for subsequent fuel shipments in advance by cashier's check.  According to the debtor, this was done at Garrow Oil's insistence; according to Garrow Oil, the debtor voluntarily made the cash-in-advance payments.  While the debtor was making the cash payments for new fuel, Garrow continued to draw upon the debtor's credit card receivables and make EFT requests.  Ultimately, the debtor was unable to pay its other vendors or its advance payments to Garrow, and eventually it ran out of fuel, necessitating the chapter 11 filing on June 23, 2009.

## ARGUMENT

Garrow Oil argued the prepetition transfers were contemporaneous exchanges for new value given to the debtor and were made in the ordinary course of business of the debtor and Garrow Oil.

The debtor argued the preferential transfers were not made in the ordinary course because the credit terms between the parties, i.e., the cash-in-advance payments, changed in June 2009.

2

The payments were made to Garrow Oil under the parties' ordinary course of payment after an extraordinary change to their previous payment practices.

DISCUSSION

For our purposes, the elements of an avoidable preference are: 1) a transfer of property of the debtor; 2) within 90 days of bankruptcy; 3) to or for the benefit of a creditor; 4) on account of an antecedent debt; 5) while the debtor is insolvent; and 6) with the effect of giving the creditor a greater return on its claim than would have been received in a chapter 7 proceeding if the transfer had not been made.  *In re Jarosz*, 322 B.R. 662, 670 (Bankr. E.D. Wis. 2005).

During trial, Garrow Oil conceded that all the elements of a preference under section 547(b) were present, and the Court so found.  However, Garrow asserted two defenses under section 547(c): contemporaneous exchanges for new value given to the debtor, and payments of debts incurred by the debtor in the ordinary course of business.  11 U.S.C. § 547(c)(1)-(2).  The exceptions set forth in section 547(c) are affirmative defenses, and the creditor against whom recovery or avoidance is sought has the burden of proving that the transfers meet a condition making them nonavoidable.  11 U.S.C. § 547(g).

*Contemporaneous Exchanges for New Value Defense*

A preferential transfer will not be avoidable to the extent that the transferee, after such transfer, gives new value to the debtor on an unsecured basis.  11 U.S.C. § 547(c)(4).  This exception is premised on the theory that "to the extent unsecured new value is given to the debtor after a preferential transfer is made, the preference is repaid to the bankruptcy estate."  *Matter of Prescott*, 805 F.2d 719, 727 (7th Cir. 1986).  Creditors are no worse off on account of the preferential transfer because value comes back into the estate for distribution to general

3

creditors.  *See In re Schabel*, 338 B.R. 376, 380 (Bankr. E.D. Wis. 2006).  Congress intended section 547(c)(4) to encourage creditors to continue doing business with troubled debtors by protecting transfers received by creditors from preference actions, to the extent that the creditors provided goods that replenished the estate during the preference period.  *In re Armstrong*, 291 F.3d 517, 525 (8th Cir. 2002).  The exception most obviously applies to revolving credit relationships; protecting a creditor who extends a "revolving credit" to a debtor is not unfair to other creditors because preferential payments are replenished by the preferred creditor's extensions of new value to the debtor.  *Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1091 (5th Cir. 1994).

In this case, the debtor's cash-in-advance payments for new fuel fall squarely within the new value exception.  The *additional* electronic fund transfers and credit card receivable draws, however, do not.

*Ordinary Course of Business Defense*

Under the ordinary course of business exception, the trustee may not avoid a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee, or made according to ordinary business terms.  11 U.S.C. § 547(c)(2).  No one disputes the debt was incurred in the ordinary course of business.  In assessing whether the ordinary course of business exception applies to how the payment was made, the Court will consider the length of time the parties were engaged in the type of transaction at issue; whether the amount or form of tender differed from past practices; whether the debtor or creditor engaged in any unusual

4

collection or payment activity; and whether the creditor took advantage of the debtor's deteriorating financial condition. *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003). No one factor is conclusive in deciding whether alleged preferential payments were made in the ordinary course of business; rather, all evidence that sheds light on practices between parties, past and present, should be considered. *In re Healthcentral.com*, 504 F.3d 775, 791 (9th Cir. 2007).

Garrow Oil repeatedly pointed out that Valley requested to purchase fuel from Garrow on a cash-in-advance basis after the EFT was denied for insufficient funds, and that Garrow did not insist on such payment terms. However, for purposes of preference analysis, who instigated the change is irrelevant. In deciding whether a transaction is outside the "ordinary course of dealing" between parties, the court is not limited to inspecting the creditor's actions, but may also consider the circumstances surrounding the debtor's actions. *Union Bank v. Wolas*, 502 U.S. 151, 160, 112 S.Ct. 527 (1991) ("This exception was intended to 'leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action *by either the debtor or his creditors* during the debtor's slide into bankruptcy.' H.R.Rep. No. 95-595, at 373, U.S.Code Cong. & Admin.News 1978, p. 6329." (emphasis added)). Thus, the transactions between the parties are considered irrespective of their catalyst.

While preference cases are generally quite fact-specific, this Court has found guidance in other cases. Over the years, several decisions have considered evidence of extraordinary collection practices, and the courts have demonstrated no reluctance to refuse a transferee-creditor's imposition of the section 547(c)(2) exception when some overreaching is in

evidence.  *See In re JSL Chem. Corp.*, 424 B.R. 573 (Bankr. S.D. Fla. 2010) (threat to place debtor on "credit hold" destroyed the creditor's ability to invoke the ordinary course defense, even though threat had been made prior to beginning of preference period); *In re Internet Corp.*, 372 B.R. 358 (Bankr. E.D. Mich. 2007) (debtor's account was placed on "credit hold" status after its payments to the creditor slowed, in an attempt to limit the creditor's credit exposure to $50,000, so the manner in which payments were made during the preference period was not consistent with the parties' pre-preference period payment terms); *In re Carini*, 245 B.R. 319 (Bankr. E.D. Wis. 2000) (court found repeated telephone calls an extraordinary collection effort); *In re Thompson Boat Co.*, 199 B.R. 908 (Bankr. E.D. Mich. 1996), *aff'd*, 173 F.3d 430 (6th Cir. 1999) (although there had been a long-standing pattern of late payments between the debtor and the creditor, the creditor's change of collection policy rendered the transaction not in the ordinary course of business); *In re Molded Acoustical Prods., Inc.*, 18 F.3d 217 (3d Cir. 1994) (preference-period payments were not made according to ordinary course of business where creditor altered its collection practices by attempting to institute a payment plan and by mounting pressure on debtor to make larger payments as precondition to further shipments); *In re Mid-South Cabinet & Millwork, Inc.*, 125 B.R. 16 (Bankr. E.D. Ark. 1990) (threat to suspend future credit); *In re Indus. Supply Corp.*, 109 B.R. 484 (Bankr. M.D. Fla. 1990), *aff'd*, 127 B.R. 62 (M.D. Fla. 1991), *aff'd*, 961 F.2d 1582 (11th Cir. 1992) (creditor refused to deliver new merchandise unless debtor hand-delivered payment).

In another fuel supplier case, *In re Smith Min. and Material, LLC*, 405 B.R. 589 (Bankr. W.D. Ky. 2009), the payments made by a chapter 11 debtor to its supplier during the preference period were held to be not made in the ordinary course of business between the debtor and the

6

supplier or according to ordinary business terms.  The payments thus were not protected from avoidance under the ordinary course of business defense to the trustee's preferential transfer claims.  The average 67-day period for the payment of the debtor's invoices after receipt increased to 76 days, and the debtor's regular practice of paying outstanding invoices first changed once the debtor began experiencing cash flow problems.  The supplier threatened to suspend fuel deliveries unless the debtor made payment for the current fuel deliveries immediately.

In *In re Bridge Info. Sys., Inc.*, 383 B.R. 139 (Bankr. E.D. Mo. 2008), a supplier of a chapter 11 debtor received roughly $24.1 million in payments over the 90 days immediately preceding the petition date.  During that same time, the supplier was providing the debtor with nearly $12.5 million of computer products.  The supplier failed to satisfy its burden of showing that these payments, which significantly reduced the supplier's exposure on its accounts receivable with the debtor, were made in the "ordinary course of business or financial affairs" of the debtor and supplier, because payments had been made after the debtor's accounts had been identified by the supplier as ones that warranted attention.  Although the preference-period payments were generally consistent –  in terms of timing, amount, and frequency – with payments that the debtor had previously made to the supplier, the payments in question for the first time included payments, not by check, but by wire transfer, and the invoices generated by the supplier during this time period contained "pre-pay" language.

This situation is very similar to what was happening between these parties.  The EFT was dishonored around June 1, 2009, and within the next few days, everyone knew about it.  At that point the relationship between the parties changed.  On June 4, Garrow put through an EFT for

$16,294.82, representing the difference between credit card payments it had received and the invoice it generated on May 25, 2009. This is the last payment made in the ordinary course of the parties' business, and it is the last nonpreferential payment. On June 5, 2009, the debtor's records indicate that it was starting to deliver checks for current deliveries, and thereafter there were several EFTs generated as had been done in the past. However, the advance payment for current deliveries, plus collection pursuant to previous practice, took the payments out of the ordinary course of business. Any payment after June 5, 2009, drew down the debtor's older outstanding balance; the most recent delivery was already paid for. Eventually, Garrow began sweeping credit cards only, without making EFT withdrawals. This was also a change in the parties' past practices. Thus, any reduction in the debtor's debt to Garrow on or after June 5, 2009, was outside the parties' ordinary course of business and can be avoided by the debtor in possession.

The following transfers are deemed preferential and not subject to any defense under section 547(c):

| | | | |
|---|---|---|---|
| 06/05/09 | CC | (Northsider) | $ 1,085.94 |
| 06/05/09 | CC | (Southsider) | $ 515.29 |
| 06/07/09 | CC | (Northsider) | $ 1,222.06 |
| 06/07/09 | CC | (Southsider) | $ 597.73 |
| 06/08/09 | CC | (Northsider) | $ 181.03 |
| 06/08/09 | EFT | (Southsider) | $ 5,786.21 |
| 06/08/09 | CC | (Southsider) | $ 99.01 |
| 06/08/09 | CC | (Southsider) | $ 30.00 |
| 06/09/09 | CC | (Northsider) | $ 659.30 |
| 06/09/09 | EFT | (Northsider) | $12,440.48 |
| 06/09/09 | EFT | (Southsider) | $ 8,816.55 |
| 06/09/09 | CC | (Southsider) | $ 211.63 |
| 06/10/09 | CC | (Northsider) | $ 1,333.40 |
| 06/10/09 | CC | (Southsider) | $ 439.61 |
| 06/11/09 | CC | (Northsider) | $ 1,483.47 |
| 06/11/09 | EFT | (Northsider) | $ 8,756.71 |

| 06/11/09 | CC  | (Southsider) | $     15.00 |
|----------|-----|--------------|-------------|
| 06/11/09 | CC  | (Southsider) | $    908.62 |
| 06/12/09 | CC  | (Northsider) | $  1,550.09 |
| 06/12/09 | CC  | (Southsider) | $    353.63 |
| 06/14/09 | CC  | (Northsider) | $    972.77 |
| 06/14/09 | CC  | (Southsider) | $    443.79 |
| 06/15/09 | CC  | (Northsider) | $    136.75 |
| 06/15/09 | CC  | (Southsider) | $     92.04 |
| 06/15/09 | CC  | (Southsider) | $     75.00 |
| 06/16/09 | CC  | (Northsider) | $  1,231.77 |
| 06/16/09 | CC  | (Southsider) | $    454.33 |
| 06/17/09 | CC  | (Northsider) | $  1,084.63 |
| 06/17/09 | CC  | (Southsider) | $    120.73 |
| 06/18/09 | CC  | (Northsider) | $  1,357.24 |
| 06/18/09 | CC  | (Southsider) | $    317.54 |
| 06/19/09 | CC  | (Northsider) | $    511.42 |
| 06/19/09 | EFT | (Northsider) | $     64.29 |
| 06/19/09 | CC  | (Southsider) | $    110.28 |
| 06/21/09 | CC  | (Northsider) | $     18.41 |

Total                                    $53,476.75

CONCLUSION

Based on the foregoing, the Court finds Garrow Oil Corporation failed to demonstrate that the electronic fund transfers and credit card receivables received on or after June 5, 2009, were contemporaneous exchanges for new value or made in the ordinary course of the parties' business. The debtor therefore may avoid $53,476.75 worth of transfers under 11 U.S.C. § 547 and Garrow's claim shall be disallowed under 11 U.S.C. § 502(d). A separate order for judgment will be entered accordingly.

July 20, 2010

Margaret Dee McGarity
United States Bankruptcy Judge

9